1

2

3

4

5

6

7

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

8

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br><br>Plaintiff, )<br><br>v. )<br><br>PORT OF TACOMA, a Municipal )<br>Corporation, DEMCO, INC., a  New York )<br>State Corporation, WAKA GROUP, INC., a )<br>Washington State Corporation, SCARSELLA )<br>BROTHERS, INC., a Washington State )<br>Corporation, and THE STATE OF )<br>WASHINGTON, )<br><br>Defendants. )<br> ) | No. 11-cv-05253-RJB<br><br>**CONSENT DECREE** |

18

WHEREAS, the Plaintiff, the United States of America, on behalf of the United States

19

Environmental Protection Agency ("EPA"), filed the Complaint herein against the Port of

20

Tacoma ("the Port"), DEMCO, Inc. ("DEMCO"), WAKA Group, Inc. ("WAKA Group"), and

21

Scarsella Brothers, Inc. ("Scarsella Brothers") (collectively, "Defendants"), alleging that

22

Defendants violated Section 301(a) of the Clean Water Act ("CWA"), 33 U.S.C. § 1311(a);

WHEREAS, the Complaint alleges that Defendants violated CWA Section 301(a) by discharging dredged or fill material and/or controlling and directing the discharge of dredged or fill material into waters of the United States at two sites located in Tacoma, Washington (collectively, the "Sites") and more fully described in the Complaint, without authorization by the United States Department of the Army ("the Corps").  The Port, DEMCO and WAKA Group are alleged to have participated in the discharge of dredged or fill material at the "Hylebos Marsh" site.  The Port and Scarsella Brothers are alleged to have participated in the discharge of dredged or fill material at the "EB-1B" site.

WHEREAS, the Complaint seeks (1) to enjoin the discharge of pollutants into waters of the United States in violation of CWA Section 301(a), 33 U.S.C. § 1311(a); (2) to require Defendants, at their own expense and at the direction of EPA, to restore and/or mitigate the damages caused by their unlawful activities; and (3) to require Defendants to pay civil penalties as provided in 33 U.S.C. § 1319(d);

WHEREAS, the Complaint also names the State of Washington as a defendant pursuant to Section 309(e) of the Clean Water Act, 33 U.S.C. § 1319(e);

WHEREAS, on August 6, 2012, DEMCO filed a Chapter 11 Voluntary Petition for bankruptcy in the United States Bankruptcy Court for the Western District of New York (Case No. 1-12-12465 MJK).

WHEREAS, this Consent Decree is intended to constitute a complete and final settlement of the United States' claims against the Port, WAKA Group, Scarsella Brothers, and the State of Washington (collectively, "Settling Defendants") under the CWA set forth in the Complaint regarding the Sites;

WHEREAS, the Settling Defendants have negotiated and addressed specific liabilities among the Settling Defendants in the form of side agreements that are not included as part of this Consent Decree;

WHEREAS, the United States and Settling Defendants agree that settlement of this case is in the public interest and that entry of this Consent Decree is the most appropriate means of resolving the United States' claims under the CWA against Settling Defendants in this case; and

WHEREAS, the Court finds that this Consent Decree is a reasonable and fair settlement of the United States' claims against Settling Defendants in this case, and that this Consent Decree adequately protects the public interest in accordance with the CWA and all other applicable federal law.

THEREFORE, before the taking of any testimony upon the pleadings, without further adjudication of any issue of fact or law, and upon consent of the parties hereto by their authorized representatives, it is hereby ORDERED, ADJUDGED and DECREED as follows:

## I.    JURISDICTION AND VENUE

1.     This Court has jurisdiction over the subject matter of these actions and over the parties pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 309(b) of the CWA, 33 U.S.C. § 1319(b).

2.     Venue is proper in the Western District of Washington pursuant to CWA Section 309(b), 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1391(b) and (c), because the Defendants conduct business in this District, the subject property is located in this District, and the causes of action alleged in the Complaint arose in this District.

3.      The Complaint states claims upon which relief can be granted pursuant to Sections 301, 309 and 404 of the CWA, 33 U.S.C. §§ 1311, 1319 and 1344.

## II.      APPLICABILITY

4.      The obligations of this Consent Decree shall apply to and be binding upon Settling Defendants, their officers, directors, agents, employees and servants, and their successors and assigns and any person, firm, association or corporation who is, or will be, acting in concert or participation with any of the Settling Defendants whether or not such person has notice of this Consent Decree.  In any action by the United States to enforce this Consent Decree against a Settling Defendant, the Settling Defendant shall not raise as a defense, in this action, the failure of any of its officers, directors, agents, employees, successors or assigns or any person, firm or corporation acting in concert or participation with the Settling Defendant, to take any actions necessary to comply with the provisions hereof.  The State of Washington's liability under the Consent Decree is limited by Section 309(e) of the Clean Water Act, 33 U.S.C. § 1319(e).

5.      The transfer of ownership or other interest in the Hylebos Marsh, Upper Clear Creek Mitigation Site ("UCCMS") and/or Wetland EB-1B sites (as described in the Complaint and in Appendix A, appended hereto and incorporated herein by reference) shall not alter or relieve Settling Defendants of their obligation to comply with all of the terms of this Consent Decree.  At least fifteen (15) days prior to the transfer of ownership or other interest in the Hylebos Marsh, UCCMS or Wetland EB-1B sites, the party making such transfer shall provide written notice and a true copy of this Consent Decree to its successors in interest and shall simultaneously notify EPA and the United States Department of Justice at the addresses

specified in Section IX below that such notice has been given.  As a condition to any such transfer, the Settling Defendant making the transfer shall reserve all rights necessary to comply with the terms of this Consent Decree.

### III.   SCOPE OF CONSENT DECREE

6.     This Consent Decree shall constitute a complete and final settlement of all civil claims for injunctive relief and civil penalties alleged in the Complaint against the Settling Defendants under CWA Section 301 concerning the Sites.

7.     It is the express purpose of the parties in entering this Consent Decree to further the objectives set forth in CWA Section 101, 33 U.S.C. § 1251.  All plans, studies, construction, remedial maintenance, monitoring programs, and other obligations in this Consent Decree or resulting from the activities required by this Consent Decree shall have the objective of causing Settling Defendants to achieve and maintain full compliance with, and to further the purposes of, the CWA.

8.     Settling Defendants' obligations under this Consent Decree are joint and several.

9.     Except as in accordance with this Consent Decree, Settling Defendants and their agents, successors and assigns are enjoined from discharging any pollutant into waters of the United States, unless such discharge complies with the provisions of the CWA and its implementing regulations.

10.     The parties acknowledge that Nationwide Permit 32, found at 77 Fed. Reg. 10,277 (Feb. 21, 2012), authorizes any fill that was placed as of November 1, 2008 in the areas identified in the Complaint and Appendix A, to remain in place, subject to the conditions and requirements set forth in the Nationwide Permit and this Consent Decree.  The parties further

acknowledge that Nationwide Permit 32, authorizes the discharge of dredged or fill material insofar as such discharge is necessary to complete the work required to be performed pursuant to this Consent Decree.  Any such discharge of dredged or fill material necessary for work required by this Consent Decree shall be subject to the conditions and requirements of the Nationwide Permit and this Consent Decree.  Settling Defendants are solely responsible for ensuring that the conditions and requirements of Nationwide Permit 32 have been met and that all necessary authorizations are in place.

11.     This Consent Decree is not and shall not be interpreted to be a permit or modification of any existing permit issued pursuant to Sections 402 or 404 of the CWA, 33 U.S.C. §§ 1342 or 1344, or any other law.  Nothing in this Consent Decree shall limit the ability of the United States Army Corps of Engineers to issue, modify, suspend, revoke or deny any individual permit or any nationwide or regional general permit, nor shall this Consent Decree limit the EPA's ability to exercise its authority pursuant to Section 404(c) of the CWA, 33 U.S.C. § 1344(c).

12.     This Consent Decree in no way affects or relieves Settling Defendants of their responsibility to comply with any applicable federal, state, or local law, regulation or permit.

13.     This Consent Decree in no way affects the rights of the United States as against any person not a party to this Consent Decree.

14.     The United States reserves any and all legal and equitable remedies available to enforce the provisions of this Consent Decree and applicable law.

15.     Nothing in this Consent Decree shall constitute an admission of fact or law by any party.

**IV.    SPECIFIC PROVISIONS**

<u>CIVIL PENALTIES</u>

16.    Settling Defendants shall pay a civil penalty to the United States in the amount of Five Hundred Thousand Dollars ($500,000.00), within 30 days of entry of this Consent Decree.

17.    Settling Defendants shall make the above-referenced  payment by FedWire Electronic Funds Transfer ("EFT" or wire transfer) to the U.S. Department of Justice account in accordance with current electronic funds transfer procedures, referencing U.S.A.O. file number 2011V00024, EPA Region X and the DOJ case number (DJ # 90-5-1-1-18939).  Payment shall be made in accordance with instructions provided to the Settling Defendants by the Financial Litigation Unit of the United States Attorney's Office for the Western District of Washington. Any payments received by the Department of Justice after 4:00 P.M. (Eastern Time) will be credited on the next business day.

18.    Upon payment of the civil penalty required by this Consent Decree, Settling Defendants shall provide written notice, at the addresses specified in Section IX of this Consent Decree, that such payment was made in accordance with Paragraph 17.

19.    Civil penalty payments pursuant to this Consent Decree (including stipulated penalty payments under Section VIII) are penalties within the meaning of Section 162(f) of the Internal Revenue Code, 26 U.S.C. § 162(f), or of 26 C.F.R. § 1.162-21 and are not tax deductible expenditures for purposes of federal law.

<u>RESTORATION AND MITIGATION</u>

20.     Settling Defendants shall perform restoration and mitigation projects under the terms and conditions stated in Appendix A appended hereto and incorporated herein by reference.

21.     Upon completion of the terms and conditions of Appendix A, Settling Defendants shall not mow, cut, clear, cultivate, dredge, excavate, farm, fill, dewater, drain or otherwise disturb in any manner whatsoever the UCCMS and Wetland EB-1B site  identified in Appendix A, except as approved by EPA.

22.     To ensure that the UCCMS and Wetland EB-1B site identified in Appendix A remain undisturbed, Settling Defendants shall, within fifteen (15) days of entry of this Consent Decree, record a certified copy of this Consent Decree with the Auditor's Office, in Pierce County, Washington.  Thereafter, each deed, title, or other instrument conveying an interest in the UCCMS and Wetland EB-1B site identified in Appendix A shall contain a notice stating that the property is subject to this Consent Decree and shall reference the recorded location of the Consent Decree and any restrictions applicable to the property under this Consent Decree.

**V.     NOTICES AND OTHER SUBMISSIONS**

23.     The Port  shall comply with all notification deadlines in Appendix A, whether or not the specified task has been completed.  The Port shall provide the written notice(s) required by Appendix A at the addresses specified in Section IX of this Consent Decree.

24.     If the required task has been completed, the notice shall specify the date when it was completed, and explain the reasons for any delay in completion beyond the scheduled time for such completion required by the Consent Decree.

25.     In all notices, documents or reports submitted to the United States pursuant to this Consent Decree, the Settling Defendants shall, by signature of a senior management official, certify such notices, documents and reports as follows:

I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering such information, the information submitted is, to the best of my knowledge and belief, true, accurate and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

**VI.     RETENTION OF RECORDS AND RIGHT OF ENTRY**

26.     Until ten years after entry of this Consent Decree, Settling Defendants shall preserve and retain all records and documents now in their possession or control or which come into their possession or control that relate in any manner to the performance of the tasks in Appendix A, regardless of any corporate retention policy to the contrary.  Until ten years after entry of this Consent Decree, Settling Defendants shall also instruct their contractors and agents to preserve all documents, records, and information of whatever kind, nature or description relating to the performance of the tasks in Appendix A.

27.     At the conclusion of the document retention period, Settling Defendants shall notify the United States at least 90 days prior to the destruction of any such records or

documents, and, upon request by the United States, Settling Defendants shall deliver any such records or documents to EPA.  The Settling Defendants may assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If the Settling Defendants assert such a privilege, they shall provide the United States with the following:  (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Settling Defendants.  However, no documents, reports or other information created or generated pursuant to the requirements of the Consent Decree shall be withheld on the grounds that they are privileged.

28.    A.  Until termination of this Consent Decree, the United States and its authorized representatives and contractors shall have authority at all reasonable times to enter the Settling Defendants' premises to:

1)    Monitor the activities required by this Consent Decree;

2)    Verify any data or information submitted to the United States;

3)    Obtain samples;

4)    Inspect and evaluate Settling Defendants' restoration and/or mitigation activities; and

5)    Inspect and review any records required to be kept under the terms and conditions of this Consent Decree and the CWA.

B.  This provision of this Consent Decree is in addition to, and in no way limits or otherwise affects, the statutory authorities of the United States to conduct inspections, to require monitoring and to obtain information from the Settling Defendants as authorized by law.

## VI.   DISPUTE RESOLUTION

29.   Any dispute that arises with respect to the meaning or requirements of this Consent Decree shall be, in the first instance, the subject of informal negotiations between the United States and Settling Defendants affected by the dispute to attempt to resolve such dispute. The period for informal negotiations shall not extend beyond thirty (30) days beginning with written notice by one party to the other affected party or parties that a dispute exists, unless agreed to in writing by those parties.  If a dispute between the United States and Settling Defendants cannot be resolved by informal negotiations, then the position advanced by the United States shall be considered binding unless, within thirty (30) days after the end of the informal negotiations period, the Settling Defendants file a motion with the Court seeking resolution of the dispute.  The motion shall set forth the nature of the dispute and a proposal for its resolution.  The United States shall have thirty (30) days to respond to the motion and propose an alternate resolution.  The Settling Defendants shall have fourteen (14) days to reply to the United States' response before the Court.  In resolving any such dispute, the Settling Defendants shall bear the burden of proving by a preponderance of the evidence that the United States' position is not in accordance with the objectives of this Consent Decree and the CWA, and that the Settling Defendants' position will achieve compliance with the terms and conditions of this Consent Decree and the CWA.

30.     If the United States believes that a dispute is not a good faith dispute, or that a delay would pose or increase a threat of harm to the public or the environment, it may move the Court for a resolution of the dispute prior to the expiration of the thirty (30) day period for informal negotiations.  The Settling Defendants shall have fourteen (14) days to respond to the motion and propose an alternate resolution before the Court.  In resolving any such dispute, the Settling Defendants shall bear the burden of proving by a preponderance of the evidence that the United States' position is not in accordance with the objectives of this Consent Decree, and that the Settling Defendants' position will achieve compliance with the terms and conditions of this Consent Decree and the CWA.

31.     The filing of a motion asking the Court to resolve a dispute shall not extend or postpone any obligation of Settling Defendants under this Consent Decree, except as provided in Paragraph 39 below regarding payment of stipulated penalties.

## VII.    FORCE MAJEURE

32.     Settling Defendants shall perform the actions required under this Decree within the time limits set forth or approved herein, unless the performance is prevented or delayed solely by events which constitute a Force Majeure event.  A Force Majeure event is defined as any event arising from causes beyond the control of Settling Defendants, including their employees, agents, consultants and contractors, which could not be overcome by due diligence and which delays or prevents the performance of an action required by this Consent Decree within the specified time period.  A Force Majeure event does not include, *inter alia*, increased costs of performance, changed economic circumstances, changed labor relations, normal precipitation or climate events, changed circumstances arising out of the sale, lease or other

transfer or conveyance of title or ownership or possession of a site, or failure to obtain federal, state or local permits.

33.     If Settling Defendants believe that a Force Majeure event has affected Settling Defendants' ability to perform any action required under this Consent Decree, Settling Defendants shall notify the United States in writing within seven (7) calendar days after the event at the addresses listed in Section IX.  Such notice shall include a discussion of the following:

A.     what action has been affected;

B.     the specific cause(s) of the delay;

C.     the length or estimated duration of the delay; and

D.     any measures taken or planned by the Settling Defendants to prevent or minimize the delay and a schedule for the implementation of such measures.

Settling Defendants may also provide to the United States any additional information that they deem appropriate to support their conclusion that a Force Majeure event has affected their ability to perform an action required under this Consent Decree.  Failure to provide timely and complete notification to the United States shall constitute a waiver of any claim of Force Majeure as to the event in question.

34.     If the United States determines that the conditions constitute a Force Majeure event, then the deadline for the affected action shall be extended by the amount of time of the delay caused by the Force Majeure event.  Settling Defendants shall coordinate with EPA to

determine when to begin or resume the operations that had been affected by any Force Majeure event.

35.     If the parties are unable to agree whether the conditions constitute a Force Majeure event, or whether the length of time for fulfilling the provision of the Consent Decree at issue should be extended, any party may seek a resolution of the dispute under the procedures in Section VI of this Consent Decree.

36.     Settling Defendants shall bear the burden of proving (1) that the noncompliance at issue was caused by circumstances entirely beyond the control of Settling Defendants and any entity controlled by Settling Defendants, including their contractors and consultants; (2) that Settling Defendants or any entity controlled by them could not have foreseen and prevented such noncompliance; and (3) the number of days of noncompliance that were caused by such circumstances.

## VIII.   STIPULATED PENALTIES

37.     After entry of this Consent Decree, if Settling Defendants fail to timely fulfill any requirements of the Consent Decree (including Appendix A), Settling Defendants shall pay a stipulated penalty to the United States for each violation of each requirement of this Consent Decree as follows:

| | | |
|---|---|---|
| A. | For Day 1 up to and including Day 30 of non-compliance | $1,000.00 per day |
| B. | For Day 31 up to and including 60 of non-compliance | $2,000.00 per day |
| C. | For Day 61 and beyond of non-compliance | $3,000.00 per day |

Such payments shall be made without demand by the United States on or before the last day of the month following the month in which the stipulated penalty accrued.

38.     Any disputes concerning the amount of stipulated penalties, or the underlying violation that gives rise to the stipulated penalties, that cannot be resolved by the parties pursuant to the Dispute Resolution provisions in Section VI and/or the Force Majeure provisions in Section VII shall be resolved upon motion to this Court as provided in Paragraphs 29 and 30.

39.     The filing of a motion requesting that the Court resolve a dispute shall stay Settling Defendants' obligation to pay any stipulated penalties with respect to the disputed matter pending resolution of the dispute.  Notwithstanding the stay of payment, stipulated penalties shall continue to accrue from the first day of any failure or refusal to comply with any term or condition of this Consent Decree.  In the event that Settling Defendants do not prevail on the disputed issue, stipulated penalties shall be paid by Settling Defendants as provided in this Section.

40.     To the extent Settling Defendants demonstrate to the Court that a delay or other non-compliance was due to a Force Majeure event (as defined in Paragraph 32 above) or otherwise prevail on the disputed issue, the Court shall excuse the stipulated penalties for that delay or non-compliance.

41.     In the event that a stipulated penalty payment is applicable and not made on time, interest will be charged in accordance with the statutory judgment interest rate provided for in 28 U.S.C. § 1961.  The interest shall be computed daily from the time the payment is due until the date the payment is made.  The interest shall also be compounded annually.

42.     Settling Defendants shall make any payment of a stipulated penalty by FedWire Electronic Funds Transfer ("EFT" or wire transfer) to the U.S. Department of Justice account in accordance with current electronic funds transfer procedures, referencing U.S.A.O. file number 2011V00024, EPA Region X and the DOJ case number (DJ # 90-5-1-1-18939).  Payment shall be made in accordance with instructions provided to the Settling Defendants by the Financial Litigation Unit of the United States Attorney's Office for the Western District of Washington. Any payments received by the Department of Justice after 4:00 P.M. (Eastern Time) will be credited on the next business day.  Further, upon payment of any stipulated penalties, the Settling Defendant making such payments shall provide written notice, at the addresses specified in Section IX of this Decree.

## IX.     ADDRESSES

43.     All notices and communications required under this Consent Decree shall be made to the parties through each of the following persons and addresses:

A.     <u>TO EPA</u>:

    (1)     Kimberly Owens
          Assistant Regional Counsel
          United States Environmental Protection Agency
          Region 10
          1200 Sixth Avenue
          Suite 900, ORC-158
          Seattle, WA 98101

    (2)     Chan Pongkhamsing
          Wetlands Enforcement Coordinator
          United States Environmental Protection Agency
          Region 10
          1200 Sixth Avenue
          Suite 900, ETPA-083
          Seattle, WA 98101

B.      TO THE UNITED STATES DEPARTMENT OF JUSTICE

        Section Chief
        Environmental Defense Section
        Environment and Natural Resources Division
        U.S. Department of Justice
        P.O. Box 7611
        Washington, D.C. 20044

C.      TO SETTLING DEFENDANTS:

        Port of Tacoma
        Port Chief Executive Officer
        1 Sitcum Way
        P.O. Box 1837
        Tacoma, WA 98401

        Joseph A. Brogan
        Foster Pepper PLLC
        1111 Third Avenue, Suite 3400
        Seattle, WA 98101-3299

        Scarsella Brothers, Inc.
        Tamarah Hancock, Esq.
        General Counsel
        Scarsella Brothers, Inc.
        P.O. Box 68697
        Seattle, WA 98168-0697

        Mark M. Myers
        Williams Kastner
        601 Union Street, Suite 4100
        Seattle, WA 98101

        WAKA Group
        c/o Jeffrey D. Laveson
        Carney Badley Spellman
        701 Fifth Avenue, Suite 3600
        Seattle, WA 98104

## X.   COSTS OF SUIT

44.     Each party to this Consent Decree shall bear its own costs and attorneys' fees in this action.  Should Settling Defendants subsequently be determined by the Court to have

violated the terms or conditions of this Consent Decree, Settling Defendants shall be liable for any costs or attorneys' fees incurred by the United States in any action against Settling Defendants for noncompliance with or enforcement of this Consent Decree.

## XI.   PUBLIC COMMENT

45.     The parties acknowledge that after the lodging and before the entry of this Consent Decree, final approval by the United States is subject to the requirements of 28 C.F.R. § 50.7, which provides for public notice and comment.  The United States reserves the right to withhold or withdraw its consent to the entry of this Consent Decree if the comments received disclose facts which lead the United States to conclude that the proposed judgment is inappropriate, improper, or inadequate.  The Settling Defendants agree not to withdraw from, oppose entry of, or to challenge any provision of the Consent Decree that was lodged with the Court, unless the United States has notified the Settling Defendants in writing that it no longer supports entry of the Consent Decree.

## XII.   CONTINUING JURISDICTION OF THE COURT

46.     This Court shall retain jurisdiction over this action in order to enforce or modify the Consent Decree consistent with applicable law or to resolve all disputes arising hereunder as may be necessary or appropriate for construction or execution of this Consent Decree.  During the pendency of the Consent Decree, any party may apply to the Court for any relief necessary to construe and effectuate the Consent Decree.

## XIII.  MODIFICATION

47.     Upon its entry by the Court, this Consent Decree shall have the force and effect of a final judgment.  EPA may, in its sole discretion, extend in writing the completion deadlines in

Appendix A, provided a Settling Defendant submits a timely written request demonstrating good

cause for the requested extension.  Any other modification of this Consent Decree shall be in

writing, and shall not take effect unless signed by both the United States and the Settling

Defendants and approved by the Court.

## XIV.   TERMINATION

48.     Except for Paragraph 21, this Consent Decree may be terminated by either of the

following:

A.     Settling Defendants and the United States may at any time make a joint

motion to the Court for termination of this Consent Decree or any portion of it; or

B.      Settling Defendants may make a unilateral motion to the Court to terminate

this Consent Decree after each of the following has occurred:

1.     Settling Defendants have obtained and maintained compliance with all

provisions of this Consent Decree, including the obligations set forth in Appendix A, and

the CWA for twelve (12) consecutive months;

2.     Settling Defendants have paid all penalties and other monetary obligations

hereunder and no penalties or other monetary obligations are outstanding or owed to the

United States;

3.     Settling Defendants have certified compliance pursuant to subparagraphs 1

and 2 above to the Court and all Parties; and

4.     Within forty-five (45) days of receiving such certification from the Settling

Defendants, EPA has not contested in writing that such compliance has been achieved.  If

1    EPA disputes Settling Defendants' full compliance, this Consent Decree shall remain in

2    effect pending resolution of the dispute by the Parties or the Court.

3  IT IS SO ORDERED.

4    Dated and entered this 22nd day of November, 2013.

5

6

7
                                        ROBERT J. BRYAN
                                        United States District Judge
8  ON BEHALF OF THE UNITED STATES:

9  ROBERT G. DREHER
   Acting Assistant Attorney General
10  Environment and Natural Resources Division

11

    S /_____                    8/5/13
12  Kent E. Hanson                                    DATE
    Austin D. Saylor
13  United States Department of Justice
    Environment and Natural Resources Division
14  Environmental Defense Section
    601 D Street, N.W., Suite 8000
15  Washington, DC 20004
    (206) 220-4198 (Hanson);(202) 514-1880 (Saylor)
16  Fax: (202) 514-8865
    kent.hanson@usdoj.gov
17  austin.saylor@usdoj.gov

18  JENNY A. DURKAN
    United States Attorney for the
19  Western District of Washington

20  Brian C. Kipnis
    Assistant United States Attorney
21  700 Stewart Street, Suite 5220
    Seattle, WA 98101
22  (206) 553-7970
    brian.kipnis@usdoj.gov

--

ON BEHALF OF THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:

S /_____          7/23/13
Allyn L. Stern                                DATE
Regional Counsel
Kimberly A. Owens
Assistant Regional Counsel
United States Environmental Protection Agency
Region 10
1200 Sixth Avenue, Suite 900
Seattle, WA 98101


ON BEHALF OF THE PORT OF TACOMA:


S /_____          7/31/13
John Wolfe                                    DATE
Port Chief Executive Officer
1 Sitcum Way
P.O. Box 1837
Tacoma, WA 98401


S /_____          7/31/13
Joseph A. Brogan                              DATE
FOSTER PEPPER PLLC
1111 Third Avenue, Suite 3400
Seattle, WA 98101
206-447-6407
Fax:  206-749-1935
brogj@foster.com

ON BEHALF OF THE STATE OF WASHINGTON

ROBERT FERGUSON
Attorney General

S /_____          7/24/13
Thomas J. Young                               DATE
Office of the Attorney General
P.O. Box 40117
Olympia, WA 98504-0117
360-586-6770
Fax: 360-586-6760
ecyolyef@atg.wa.gov

TomY@atg.wa.gov
ON BEHALF OF SCARSELLA BROTHERS, INC.


S /_____          7/26/13
Mark McLean Myers                                    DATE
Heidi L. Evatt
WILLIAMS KASTNER & GIBBS
601 Union Street, Suite 4100
Seattle, WA 98101
206-628-6600
Fax: 206-628-6611
mmyers@williamskastner.com;
hevatt@williamskastner.com


ON BEHALF OF WAKA GROUP, INC.


S /_____          8/5/13
Jeffrey D. Laveson                                   DATE
John C. Dippold
CARNEY BADLEY SPELLMAN
701 Fifth Avenue, Suite 3600
Seattle, WA 98104
206-622-8020
Fax: 206-622-8983
laveson@carneylaw.com;
dippoldj@carneylaw.com